LAW OFFICES OF
## SANFORD M. CIPINKO

SANFORD M. CIPINKO
JEREMY CLOYD
YULIYA MAGOMEDOV

55 FRANCISCO STREET
SUITE 403
SAN FRANCISCO, CALIFORNIA 94133
TEL: (415) 693-9905
FAX: (415) 693-9904

EMAIL: scipinko@cipinkolaw.com

May 20, 2008

Judge Jeffrey S. White
U.S. District Court, Northern District of California
450 Golden Gate Ave., Courtroom 2
San Francisco, CA 94102

**Re:**   **Alemozaffar v. CCSF, Case No. C07-4494 JSW**

Dear Judge White:

The parties in this excessive force case have a discovery dispute relating to defendants' production of <u>Monell</u> documents. The parties met and conferred in person unsuccessfully. True and correct copies of the parties' discovery requests and responses are attached — requests 2, 4-11, 13 and 14 are in dispute.

## PLAINTIFF'S CONTENTIONS

In December 2006, Plaintiff Mehrdad Alemozaffar, a UCLA medical student, was repeatedly electrocuted with a taser while restrained face-down against the ground with his hands behind his back. Earlier that year, the San Francisco Chronicle reported the SFPD "relies on an outmoded system to identify misconduct by its officers, and when the system does find warning signs, they are often ignored. As a result, officers whose records clearly show a propensity for violence remain on the streets." Sward, Susan. "The Use of Force: Counting Without Consequence." <u>San Francisco Chronicle</u> 6 Feb. 2006, page A-1. The Chronicle compiled 8,601 logged uses of force over nine years and identified Jesse Serna—one of the defendants in this case— as logging more force than any other officer.

In order to prove municipal liability under §1983, plaintiff must prove his rights were violated because of an official policy or unofficial custom. <u>Monell v. NY City Dept. of Social Services</u>, 436 U.S. 658, 690-91 (1978). Failing to properly train, monitor, or supervise employees may be the basis for liability. <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Blair v. City of Pomona</u>, 223 F.3d 1074, 1079-80 (9th Cir. 2000); <u>Chew v. Gates</u>, 27 F.3d 1432, 1444 (9th Cir. 1994). Plaintiff is entitled to discover supervisors' knowledge of past constitutional violations and what, if anything, they did about them in order to prove municipal liability. <u>Torres v. Kuzniasz</u>, 936 F. Supp. 1201, 1210, fn. 3 (D.N.J. 1996) (evaluative summaries highly probative following <u>Monell</u>). The documents at issue are unavailable from other sources and without them he will be unable to prove the City's violation of his constitutional rights.

LAW OFFICES OF
SANFORD M. CIPINKO

This letter addresses defendants' relevancy, overbreadth, privacy and official information objections.[1]  Plaintiff has tailored the scope of his requests to information likely to lead to relevant information.

Complaints and investigation of complaints, including internal affairs documents, (Plaintiff's Requests 2, 4-7, 9) are discoverable because they "include complaints of excessive force, the names of officers involved, witnesses identified, as well as findings and conclusions. Such evidence is relevant and would likely lead to the discovery of admissible evidence..." Soto v. City of Concord, 162 F.R.D. 603, 611 (N.D. Cal. 1995).  Complaints and investigations of administrative violations are equally relevant to ratification or notice of administrative violations—e.g. inaccurate use of force logs.

Performance appraisals (Plaintiff's Requests Nos. 8 and 14) are also discoverable, because they "may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers ... as well as on the issue of punitive damages...." Id. at 614-615.  Use of force logs (Request No. 10) are reasonably likely to be probative of prior use of force; accuracy in reporting force; and notice to the City of employees with a propensity for violence.  And reports of injuries to arrestees in conjunction with arrest records (Plaintiff's Request Nos. 11, 13) will show the historical relationship between the use of force and subsequently dismissed charges of "battery" or "resisting arrest" that had been used to justify the use of force.

Defendants contend documents responsive to Requests 2, 4-9, 13 and 14 are protected by the official information privilege and privacy interests.  However, "[i]n the context of civil rights suits against police departments" the parties' interests "should be 'moderately pre-weighted in favor of disclosure." Soto, 162 F.R.D. at 611, citing Kelly v. City of San Jose, 114 F.R.D. 653, 661 (N.D. Cal. 1987).  And before the Court balances these "pre-weighted" interests, the party asserting privilege must make "a substantial threshold showing" by declaration that satisfies the five Kelly requirements.

The attached declarations of Undersheriff Jan Dempsey and Lt. Michael Stasko do not satisfy Kelly.  Lt. Stasko and Undersheriff Dempsey's declarations lack evidence of personal knowledge and familiarity with the statements contained therein.  Both declarations refer to a May 12, 2007 date of incident, however, the incident occurred on December 17, 2006.  And while they declare they "personally reviewed the personnel and training files" they neither identify the documents reviewed nor indicate if the personnel and training files include the documents plaintiff requested.

The declarations also fail to identify specific harms that disclosure would cause—a Kelly requirement.  They instead state general concerns such as officers feeling "insecure" and "a decline in morale" without projecting the extent of these harms—also required.  For example, the

---

[1] Plaintiff is unable to assess the applicability of defendants' attorney client privilege and work-product objections because the City will not provide a privilege log.  Nor does this letter address defendants' vague and ambiguous objections because the City explained during meet and confer that plaintiff's requests are sufficiently clear.

LAW OFFICES OF
SANFORD M. CIPINKO

declarations refer to "the clear dangers of law enforcement work" but do not explain how disclosure would affect this interest. Lt. Stasko and Undersheriff Dempsey are also oblivious to the parties' stipulated protective order substantially similar to the one they propose in Paragraph 13 of their declarations. Their declarations do not explain why this Court-approved order is inadequate to protect against the general harms they have identified.

Plaintiff stipulates that the City may redact officer social security numbers, driver's license numbers and addresses prior to production as requested in paragraph 14 of its declarations to address general concerns of safety. Otherwise, plaintiff requests that this Court order the immediate production of the requested documents.

## DEFENDANTS' CONTENTIONS

Plaintiff was arrested on Broadway shortly after the bars closed when he refused a lawful order to disperse and then resisted arrest. This is a straightforward lawsuit that will rise or fall based on the various witness accounts. The jury will either believe Plaintiff's exaggerated account or reject it. Liability will then be imposed or not imposed based on that finding.

Despite the very discrete nature of this lawsuit, Plaintiff is attempting to explode its scope by seeking access to a broad array of personnel materials that have no relevance, or minimal relevance, to this lawsuit. The City has agreed to produce a substantial amount of documentary material to Plaintiff, including any Office of Citizen Complaints ("OCC") complaint forms alleging excessive force or false arrest that were submitted against the officers in the five years preceding the incident in this case, and the names of all witnesses listed in these OCC complaints. Despite this offer, Plaintiff is asking the Court to order broad production of sensitive peace officer personnel materials. Plaintiff's apparent goal is to ensure a finding against defendants by dragging accounts of other arrests into the lawsuit to make the defendant-officers look bad. In light of the officers' right of privacy and the official-information privilege, Plaintiff has not met his burden of showing his need for such a broad swath of personnel material, and the Court should deny his request.

Personnel files of government employees are protected by the official-information privilege under federal common law. *See Randolph v. City of E. Palo Alto*, 2007 U.S. Dist. LEXIS 89249, *3 (N.D. Cal. 2007). "This federal qualified governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records." *Maldonado v. Secretary of the California Department of Corrections and Rehabilitation*, 2007 U.S. Dist. LEXIS 91084, *20 (E.D. Cal. 2007). Courts also apply this privilege to investigatory files compiled for law enforcement purposes. *See Jackson v. County of Sacramento*, 175 F.R.D. 653, 655 (E.D. Cal. 1997).

In addition, defendants in federal actions may assert their constitutional right to privacy against unduly intrusive discovery. *See Breed v. United States Dist. Court*, 542 F.2d 1114, 1116 (9th Cir. 1976). A federal court applying this common law privilege may consider state privilege law as a means of construing the privilege, so long as that state law does not conflict with federal privilege law. Officers have a high expectation of privacy in their personnel files under state law. *See Stasko and Dempsey Declarations at ¶ 5.* This expectation is reasonable given the extensive privacy protections that attach to law enforcement personnel records under California law. *See Cal. Evid. Code § 1045; County of Los Angeles v. Superior Court*, 219 Cal. App. 3d

LAW OFFICES OF
SANFORD M. CIPINKO

1605, 1609 (1990) ("The peace officer and his or her employing agency [has] the right to refuse to disclose any information concerning the officer or complaints or investigations of the officer in both criminal and civil proceedings.").

Thus, whether or not Plaintiff is correct in his *Monell* relevance analysis, that is only the beginning of the inquiry. Unlike other types of discovery, potential relevance is not the only question. Rather, the possibility of relevance must be balanced against the officers' privacy rights and against the official-information privilege, taking into account the unique and dangerous nature of the work performed by law enforcement officers. Under those standards, Plaintiff's request should be rejected.

The detriment associated with production of the officers' personnel files are described in the Stasko and Dempsey declarations. Those declarations are sufficient to show the applicability of the asserted privileges. Plaintiff is correct that due to a typographical error, the date of the incident in the declarations is inaccurate, but that does not undermine the declarations' detailed recitation of why peace officer personnel information is maintained in strict confidence and what the ramifications are of disclosing the information.

If the Court does order production of documents, it should strictly circumscribe what is produced by confining production to complaints of excessive force and false arrest during a circumscribed time period. The Court should also review the documents in camera before ordering production. These documents may contain very sensitive and personal information, and the Court should not order their production without ensuring that they actually contain relevant information. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 671 (N.D. Cal. 1987). In addition, any production should be subject to the Court's confidentiality protective order.

* * *

This kind of fishing expedition has consequences. Despite the issuance of the strongest of protective orders by judges of this court, these materials have a way of being produced to news outlets. Attached is a March 12, 2008, San Francisco Bay Guardian article about a different SFPD case. At the end of the article, the author describes the anonymous packages of confidential police personnel material that periodically arrive at the Guardian. We are not suggesting that plaintiff's counsel provided this package or that they violate protective orders. They are honorable lawyers. However, given the sensitivity of these materials and the fact that they do periodically make their way to inappropriate destinations, we believe it is so important for the Court to order a limited and tightly circumscribed production (if any production is ordered) and not to open up discovery into personnel materials that are highly sensitive for any employee and certainly for police officers whose lives are in danger every day that they go to work.

Defendants respectfully request that Plaintiff's request for production of documents be denied.

Respectfully submitted,

Jeremy Cloyd
Counsel for Plaintiff

Scott Wiener
Counsel for Defendants

1  SANFORD M. CIPINKO, Esq., SBN 88102
   JEREMY CLOYD, Esq., SBN 239991
2  LAW OFFICES OF SANFORD M. CIPINKO
   55 FRANCISCO STREET, SUITE 403
3  SAN FRANCISCO, CA 94133
   VOICE:      (415) 693-9905
4  FACSIMILE:  (415) 693-9904

5  Attorneys for Plaintiff
   MEHRDAD ALEMOZAFFAR
6

7

8

9                  IN THE UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  MEHRDAD ALEMOZAFFAR,                )  Case No. C 07-04494 JSW
                                        )
12            Plaintiff,                )
                                        )
13       vs.                            )  **PLAINTIFF'S REQUEST FOR**
                                        )  **PRODUCTION OF DOCUMENTS TO**
14  CITY AND COUNTY OF SAN              )  **DEFENDANT CITY AND COUNTY OF**
    FRANCISCO, a municipal corporation; )  **SAN FRANCISCO**
15  JESSE SERNA, individually and in his)
    official capacity as a police officer for the )
16  CITY AND COUNTY OF SAN             )
    FRANCISCO; GARY MORIYAMA,          )
17  individually and in his official capacity as a )
    police officer for the CITY AND COUNTY )
18  OF SAN FRANCISCO; J. MCGRATH,      )
    individually and in his official capacity as a )
19  police officer for the CITY AND COUNTY )
    OF SAN FRANCISCO; J. REYMUNDO,     )
20  individually and in his official capacity as a )
    deputy sheriff officer for the CITY AND )
21  COUNTY OF SAN FRANCISCO; G.        )
    COVIELLO, individually and in his official )
22  capacity as a deputy sheriff officer for the )
    CITY AND COUNTY OF SAN            )
23  FRANCISCO ; and DOES 1-50,         )
    individually and in their official capacities. )
24                                      )
              Defendants.               )
25  _____)

26

27

28

1      Pursuant to Federal Rule of Civil Procedure 34, Plaintiff MEHRDAD

2   ALEMOZAFFAR requests that Defendants City and County of San Francisco answer

3   the following requests for production and produce responsive documents within 30 days

4   of the service of this document.

5   REQUEST FOR PRODUCTION NO. 1:

6   All documents identified in the City and County of San Francisco's (CCSF) initial

7   disclosures.

8   REQUEST FOR PRODUCTION NO. 2:

9   All CCSF internal affairs files regarding misconduct complaints against the individual

10  defendants in this lawsuit.

11  REQUEST FOR PRODUCTION NO. 3:

12  All policies and procedures manuals applicable to the individual defendants in this

13  lawsuit at the time of the subject incident.

14  REQUEST FOR PRODUCTION NO. 4:

15  All forms used by the CCSF internal affairs for recording and processing complaints.

16  REQUEST FOR PRODUCTION NO. 5:

17  Annual reports of the CCSF internal affairs division for the period of nine years prior to

18  the date of the subject incident.

19  REQUEST FOR PRODUCTION NO. 6:

20  A list of misconduct complaints filed against the individual defendants in this lawsuit

21  while employed with the CCSF.

22  REQUEST FOR PRODUCTION NO. 7:

23  All investigation case files for the misconduct complaints filed against the individual

24  defendants in this lawsuit while employed with the CCSF.

25  REQUEST FOR PRODUCTION NO. 8:

26  All audits and reviews of the units to which the individual defendants in this lawsuit were

27  assigned at the time of the subject incident, for the period of nine years prior to the date

28  of the incident.

REQUEST FOR PRODUCTION NO. 9:

All complaints for administrative violations filed against the individual defendants in this lawsuit while employed with the CCSF.

REQUEST FOR PRODUCTION NO. 10:

All use of force reports for the individual defendants in this lawsuit.

REQUEST FOR PRODUCTION NO. 11:

All records of arrests by the individual defendants in this lawsuit for the period of nine years prior to the date of the incident.

REQUEST FOR PRODUCTION NO. 12:

All reports regarding injuries received by the individual defendants in this lawsuit while in the course and scope of their employment with the CCSF.

REQUEST FOR PRODUCTION NO. 13:

All reports regarding injuries to persons arrested by the individual defendants in this lawsuit while in the course and scope of their employment with the CCSF.

REQUEST FOR PRODUCTION NO. 14:

All performance evaluations for the individual defendants in this lawsuit relating to their employment with the CCSF.

REQUEST FOR PRODUCTION NO. 15:

All training materials used by the CCSF that concern the use of force.

REQUEST FOR PRODUCTION NO. 16:

All training materials used by the CCSF that concern the use of Tasers.

REQUEST FOR PRODUCTION NO. 17:

All documents reflecting or constituting communication relating to the subject incident, including without limitation emails, letters and notes.

REQUEST FOR PRODUCTION NO. 18:

All documents containing, reflecting, or relating to any statements about the subject incident by any party to this lawsuit.

1  REQUEST FOR PRODUCTION NO. 19:

2  All witness statements relating or referring to the subject incident.

3  REQUEST FOR PRODUCTION NO. 20:

4  All documents reflecting the number of times an electric stun gun or Taser was used at

5  the time of the subject incident.

6  REQUEST FOR PRODUCTION NO. 21:

7  All photographs that relate to the subject incident and the injuries sustained in the

8  incident.

9

10  DATED: January 2, 2008              LAW OFFICES OF SANFORD M. CIPINKO

11

12                                     By: _Jeremy Cloyd_____

13                                         JEREMY CLOYD
                                           Attorneys for Plaintiff MEHRDAD
14                                         ALEMOZAFFAR

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2
3
4

I am a resident of the State of California and a citizen of the United States, over the age of 18 years and not a party to the within action. My business address is Law Offices of Sanford M. Cipinko, 55 Francisco Street, Suite 403, San Francisco, California 94133. On the date set forth below, I caused the parties herein to be served in the manner indicated below, at the addresses set forth below, with the attached document, to wit:

5

6
7

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CITY AND COUNTY OF SAN FRANCISCO**

8

____   Facsimile:  By transmitting via facsimile the document(s) listed above to the facsimile numbers set forth below on this date before 5:00 p.m.

9
10
11

_X_   U.S. Postal Service:  By placing the document(s) listed above a sealed envelope with postage prepaid and putting same in the outgoing mail system being readily familiar with this firm's business practice for collection and mail processing which, in the ordinary course of business is deposited in the United States mail at San Francisco, California the same day.

12

____   Hand Delivery:  By private messenger service this business day.

13

____   By Personal Service:  By personal delivery this business day.

14

____   Via Overnight Delivery Service.

15

ADDRESSES:

16
17

Ronald P Flynn
Office of the City Attorney
1390 Market St 6th Fl
San Francisco, CA 94102

18

19
20
21

I declare under perjury under the laws of the State of California that the foregoing is true and correct except as to those matters stated on information and belief and as to those matters, I believe it to be true.

22

DATED:  January 3, 2008

23

Julian Brown

24
25
26
27
28

**PROOF OF SERVICE: PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CITY AND COUNTY OF SAN FRANCISCO**

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  SCOTT D. WIENER, State Bar #189266
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-4283
6  Facsimile:    (415) 554-3837

7  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11  MEHRDAD ALEMOZAFFAR,                    Case No. C07-4494 JSW

12              Plaintiff,                  **DEFENDANT CITY AND COUNTY OF
                                            SAN FRANCISCO'S RESPONSES TO
13          vs.                             PLAINTIFF'S FIRST SET OF
                                            REQUESTS FOR PRODUCTION**
14  CITY AND COUNTY OF SAN
    FRANCISCO, a municipal corporation;     Date Action Filed:    July 20, 2007
15  JESSE SERNA, individually and in his    Trial Date:           None Set
    official capacity as a police officer for the
16  CITY AND COUNTY OF SAN
    FRANCISCO; GARY MORIYAMA,
17  individually and in his official capacity as
    a police officer for the CITY AND
18  COUNTY OF SAN FRANCISCO; J
    MCGRATH, individually and in his
19  official capacity as a police officer for the
    CITY AND COUNTY OF SAN
20  FRANCISCO; J. REYMUNDO,
    individually and in his official capacity as
21  a deputy sheriff officer for the CITY AND
    COUNTY OF SAN FRANCISCO; G.
22  COVIELLO, , individually and in his
    official capacity as a deputy sheriff officer
23  for the CITY AND COUNTY OF SAN
    FRANCISCO.
24
              Defendants.
25

26

27

28

DOCUMENT RESPONSES;                          1          n:\lit\li2007\080046\00462981.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

1    Pursuant to Federal Rule of Civil Procedure 34, Defendant City and County of San Francisco

2  hereby responds to Plaintiffs' first set of requests for production.

3  Request for Production No. 1

4    All documents identified in the City and County of San Francisco's (CCSF) initial

5  disclosures.

6  Response to Request for Production No. 1

7    The City will produce the requested documents to the extent that they are in the City's

8  possession, custody, or control, and to the extent not previously produced.

9  Request for Production No. 2

10    All CCSF internal affairs files regarding misconduct complaints against the individual

11  defendants in this lawsuit.

12  Response to Request for Production No. 2

13    The City objects to this request as vague, overbroad, not reasonably calculated to lead to the

14  discovery of admissible evidence, and seeking documents protected by the attorney-client privilege,

15  work-product doctrine, right of privacy, and official information privilege.

16  Request for Production No. 3

17    All policies and procedures manuals applicable to the individual defendants in this lawsuit at

18  the time of the subject incident.

19  Response to Request for Production No. 3

20    The City objects to this request as vague, overbroad, oppressive, and not reasonably

21  calculated to lead to the discovery of admissible evidence.  Subject to and without waiving those

22  objections, the City responds as follows:

23    The City will produce policy and procedure manuals relating to use of force, use of tasers,

24  and arrest techniques.

25  Request for Production No. 4

26    All forms used by the CCSF internal affairs for recording and processing complaints.

27

28

1  Response to Request for Production No. 4

2          The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

3  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

4  privilege, work-product doctrine, right of privacy, and official information privilege.

5  Request for Production No. 5

6          Annual reports of the CCSF internal affairs division for the period of nine years prior to the

7  date of the subject incident.

8  Response to Request for Production No. 5

9          The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

10  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

11  privilege, work-product doctrine, right of privacy, and official information privilege.

12  Request for Production No. 6

13          A list of misconduct complaints filed against the individual defendants in this lawsuit while

14  employed with the CCSF.

15  Response to Request for Production No. 6

16          The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

17  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

18  privilege, work-product doctrine, right of privacy, and official information privilege.

19  Request for Production No. 7

20          All investigation case files for the misconduct complaints filed against the individual

21  defendants in this lawsuit while employed with the CCSF.

22  Response to Request for Production No. 7

23          The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

24  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

25  privilege, work-product doctrine, right of privacy, and official information privilege.

26

27

28

1  Request for Production No. 8

2      All audits and reviews of the units to which the individual defendants in this lawsuit were

3  assigned at the time of the subject incident, for the period of nine years prior to the date of the

4  incident.

5  Response to Request for Production No. 8

6      The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

7  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

8  privilege, work-product doctrine, right of privacy, and official information privilege.

9  Request for Production No. 9

10      All complaints for administrative violations filed against the individual defendants in this

11  lawsuit while employed with the CCSF.

12  Response to Request for Production No. 9

13      The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

14  lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

15  privilege, work-product doctrine, right of privacy, and official information privilege.

16  Request for Production No. 10

17      All use of force reports for the individual defendants in this lawsuit.

18  Response to Request for Production No. 10

19      The City objects to this request as vague, overbroad, oppressive, and not reasonably

20  calculated to lead to the discovery of admissible evidence.  Subject to and without waiving those

21  objections, the City responds as follows:

22      The City has produced the incident reports prepared by the officers and deputies relating to

23  the incident giving rise to this case.

24  Request for Production No. 11

25      All records of arrests by the individual defendants in this lawsuit for the period of nine years

26  prior to the date of the incident.

27

28

1    Response to Request for Production No. 11

2        The City objects to this request as vague, overbroad, oppressive, and not reasonably

3    calculated to lead to the discovery of admissible evidence.  Subject to and without waiving those

4    objections, the City responds as follows:

5        The City will produce the incident reports and arrest materials relating to the incident giving

6    rise to this case, to the extent not previously produced.

7    Request for Production No. 12

8        All reports regarding injuries received by the individual defendants in this lawsuit while in

9    the course and scope of their employment with the CCSF.

10   Response to Request for Production No. 12

11       The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

12   lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

13   privilege, work-product doctrine, right of privacy, and official information privilege.

14   Request for Production No. 13

15       All reports regarding injuries to persons arrested by the individual defendants in this lawsuit

16   while in the course and scope of their employment with the CCSF.

17   Response to Request for Production No. 13

18       The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

19   lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

20   privilege, work-product doctrine, right of privacy, and official information privilege.

21   Request for Production No. 14

22       All performance evaluations for the individual defendants in this lawsuit relating to their

23   employment with the CCSF.

24   Response to Request for Production No. 14

25       The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to

26   lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client

27   privilege, work-product doctrine, right of privacy, and official information privilege.

28

1    Request for Production No. 15

2        All training materials used by the CCSF that concern the use of force.

3    Response to Request for Production No. 15

4        The City objects to this request as vague, overbroad, oppressive, and not reasonably

5    calculated to lead to the discovery of admissible evidence.  Subject to and without waiving those

6    objections, the City responds as follows:

7        The City will produce training manuals relating to use of force, subject to a protective order.

8    Request for Production No. 16

9        All training materials used by the CCSF that concern the use of Tasers.

10   Response to Request for Production No. 16

11       The City objects to this request as vague, overbroad, oppressive, and not reasonably

12   calculated to lead to the discovery of admissible evidence.  Subject to and without waiving those

13   objections, the City responds as follows:

14       The City will training manuals relating to use of tasers, subject to a protective order.

15   Request for Production No. 17

16       All documents reflecting or constituting communication relating to the subject incident,

17   including without limitation emails, letters and notes.

18   Response to Request for Production No. 17

19       The City objects to this request as vague and seeking documents protected by the attorney-

20   client privilege, work-product doctrine, right of privacy, and official information privilege.  Subject

21   to and without waiving those objections, the City responds as follows:

22       The City will produce responsive nonprivileged documents in its possession, custody, or

23   control, to the extent not previously produced.

24   Request for Production No. 18

25       All documents containing, reflecting, or relating to any statements about the subject incident

26   by any party to this lawsuit.

27

28

1    Response to Request for Production No. 18

2        The City objects to this request as vague and seeking documents protected by the attorney-

3    client privilege, work-product doctrine, right of privacy, and official information privilege. Subject

4    to and without waiving those objections, the City responds as follows:

5        The City will produce responsive nonprivileged documents in its possession, custody, or

6    control, to the extent not previously produced.

7    Request for Production No. 19

8        All witness statements relating or referring to the subject incident.

9    Response to Request for Production No. 19

10       The City objects to this request as vague and seeking documents protected by the attorney-

11   client privilege, work-product doctrine, right of privacy, and official information privilege. Subject

12   to and without waiving those objections, the City responds as follows:

13       The only documents of which the City is aware are documents produced by Plaintiff.

14   Request for Production No. 20

15       All documents reflecting the number of times an electric stun gun or Taser was used at the

16   time of the subject incident.

17   Response to Request for Production No. 20

18       The City objects to this request as vague and seeking documents protected by the attorney-

19   client privilege, work-product doctrine, right of privacy, and official information privilege. Subject

20   to and without waiving those objections, the City responds as follows:

21       The City will produce responsive nonprivileged documents in its possession, custody, or

22   control, to the extent not previously produced.

23   Request for Production No. 21

24       All photographs that relate to the subject incident and the injuries sustained in the incident.

25   Response to Request for Production No. 21

26       The City objects to this request as vague and seeking documents protected by the attorney-

27   client privilege, work-product doctrine, right of privacy, and official information privilege. Subject

28   to and without waiving those objections, the City responds as follows:

1    The only responsive documents of which the City is aware are the photographs produced by

2   Plaintiff.

3

4   Dated:  February 5, 2008

5                                           DENNIS J. HERRERA
6                                           City Attorney
                                            JOANNE HOEPER
7                                           Chief Trial Deputy
                                            SCOTT D. WIENER
8                                           Deputy City Attorney
9
10                                  By:_____
11                                          SCOTT D. WIENER
                                            Attorneys for Defendant
12                                          CITY AND COUNTY OF SAN FRANCISCO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT RESPONSES;                                8                    n:\lit\li2007\080046\00462981.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

1    **ALEMOZAFFAR V. CCSF, ET AL. – US DISTRICT COURT NO. C07-4494 JSW**

2                                             **PROOF OF SERVICE**

3          I, HELEN LAU, declare as follows:

4          I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza

5 Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

6          On February 6, 2008, I served the attached:

                **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S**

7       **RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**

8 on the interested parties in said action, by placing a true copy thereof in sealed envelope(s) addressed as follows:

9 Sanford M. Cipinko, Esq.
Jeremy Cloyd, Esq.

10 Law Offices of Sanford M. Cipinko
55 Francisco Street, Suite 403

11 San Francisco, CA 94133
Telephone:    (415) 693-9905

12 Facsimile:     (415) 693-9904
*Counsel of Plaintiff*

13

and served the named document in the manner indicated below:

14

15 ☒     **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States

16          Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

17 ☐     **BY PERSONAL SERVICE:** I sealed true and correct copies of the above documents in addressed envelope(s) and

18          caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service. **A declaration from the messenger who made the delivery** ☐ **is attached** or ☐ **will be filed separately with the**

19          **court.**

20 ☐     **BY OVERNIGHT DELIVERY:** I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and delivery by overnight courier service. I am readily familiar with the practices

21          of the San Francisco City Attorney's Office for sending overnight deliveries. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be collected by a courier the same day.

22 ☐     **BY FACSIMILE:** Based on a written agreement of the parties to accept service by fax, I transmitted true and correct

23          copies of the above document(s) via a facsimile machine at telephone number (415) 554-3837 to the persons and the fax numbers listed above. The fax transmission was reported as complete and without error. The transmission report was

24          properly issued by the transmitting facsimile machine, and **a copy of the transmission report** ☐ **is attached** or ☐ **will be filed separately with the court.**

25          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

26

27          Executed February 6, 2008, at San Francisco, California.

                                         _____

28                                          HELEN LAU

DOCUMENT RESPONSES;                                              n:\lit\li2007\080046\00462981.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   JOANNE HOEPER, State Bar #114961
    Chief Trial Deputy
3   SCOTT D. WIENER, State Bar #189266
    Deputy City Attorney
4   Fox Plaza
    1390 Market Street, 6th Floor
5   San Francisco, California 94102-5408
    Telephone:    (415) 554-4283
6   Facsimile:    (415) 554-3837

7   Attorneys for Defendant
    CITY AND COUNTY OF SAN FRANCISCO

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11  MEHRDAD ALEMOZAFFAR,                     Case No. C07-4494 JSW

12          Plaintiff,                       **DECLARATION OF JAN DEMPSEY**

13       vs.                                 Date Action Filed:    July 20, 2007
                                             Trial Date:           None Set
14  CITY AND COUNTY OF SAN
    FRANCISCO, a municipal corporation;
15  JESSE SERNA, individually and in his
    official capacity as a police officer for the
16  CITY AND COUNTY OF SAN
    FRANCISCO; GARY MORIYAMA,
17  individually and in his official capacity as
    a police officer for the CITY AND
18  COUNTY OF SAN FRANCISCO; J
    MCGRATH, individually and in his
19  official capacity as a police officer for the
    CITY AND COUNTY OF SAN
20  FRANCISCO; J. REYMUNDO,
    individually and in his official capacity as
21  a deputy sheriff officer for the CITY AND
    COUNTY OF SAN FRANCISCO; G.
22  COVIELLO, , individually and in his
    official capacity as a deputy sheriff officer
23  for the CITY AND COUNTY OF SAN
    FRANCISCO.
24
            Defendants.
25

26

27

28

DEMPSEY DECLARATION;                      1      c:\docume~1\sfsd\locals~1\temp\notes6030c8\00462994.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

I, Jan Dempsey, declare as follows:

1.    I am the Undersheriff of the San Francisco Sheriff's Department, and I am responsible for all Sheriff's Divisions including the Custody Division.  I have been employed as a law enforcement officer and Sheriff's Deputy for more than 25 years and have served in a variety of assignments with the Sheriff's Department.  The facts set forth herein are stated on my own personal knowledge or, as specified, upon my information and belief, based on official acts and writings.  If called as a witness, I could and would competently testify to the facts contained herein under oath.

2.    I understand that Plaintiffs have served discovery requests seeking certain documents and information relating to sheriff deputies who were allegedly involved in the May 12, 2007, arrest giving rise to this case, specifically, Deputy George Coviello and Deputy Jurnacion Reymundo.

3.    The materials and information encompassed by Plaintiffs' requests include:  (1) complaints relating to the deputies; (2) performance evaluation materials relating to the deputies; (3) training materials relating to the indicated deputies; (4) disciplinary materials relating to the deputies; (5) investigations relating to the deputies; and (6) materials relating to incidents involving the deputies that are unrelated to the arrest giving rise to this lawsuit.

4.    I have personally reviewed the personnel and training files of the identified deputies.  The San Francisco Sheriff's Department has maintained the confidentiality of the documents described in greater detail below, in compliance with California law.

5.    I am familiar with the types of information contained in a San Francisco Sheriff's deputy's personnel file.  San Francisco sheriff's deputies understand and expect that information from their personnel records and other private information may not be voluntarily disclosed by the San Francisco Sheriff's Department.  Statutes such as Penal Code sections 146e, 1328.5 and California Vehicle Code section 1808.4 explicitly recognize that the disclosure of certain information about law enforcement officers can jeopardize their safety and the safety of their families.  Further, California Evidence Code Section 1040 sets up a strict procedure requiring a showing of "good cause" for the disclosure of a peace officer's personnel records and requires a court order before any such personnel records may be disclosed.  In view of the clear dangers of law enforcement work, the San Francisco Sheriff's Department has an abiding interest in assuring the

1   safety and security of its officers and their families to the fullest extent possible. Accordingly,

2   various policies and procedures of the San Francisco Sheriff's Department also impose a duty to

3   maintain the confidentiality and security of information from its officers' personnel records.

4       6.      A court order to disclose all or significant portions of a deputy's personnel file would

5   have severe consequences for the San Francisco Sheriff's Department. Regardless of the Court's best

6   efforts to maintain the confidentiality of disclosed records, the affected deputies would feel that their

7   legal right to personal privacy and dignity has been compromised. Disclosure would cause deputies

8   who are not defendants in this case to feel insecure about their safety and privacy and, as a result, the

9   morale of the San Francisco Sheriff's Department would suffer. Any decline in morale adversely

10  affects the San Francisco Sheriff's Department in that its ability to attract and retain the most

11  qualified individuals.

12      7.      The same grave concerns described above with respect to personnel records in

13  general also are present with respect to records of administrative investigations. Production of these

14  materials would impinge on the privacy expectations of deputies. Production of these materials also

15  would undermine the effective operation of the Department, as described above.

16      8.      Regarding administrative investigations, the San Francisco Sheriff's Department must

17  be able to conduct its own internal investigations without fear of having the results of such

18  investigations publicly disclosed. If such records of administrative investigations are disclosed, then

19  the San Francisco Sheriff's Department's ability effectively to investigate its officers will be severely

20  curtailed, if not completely destroyed. The need for confidentiality of internal investigations is even

21  more important than the need for confidentiality of performance reviews described above.

22      9.      The above facts highlight the critical need for the confidentiality of various personnel

23  records of the San Francisco Sheriff's Department. Such confidentiality best serves the public

24  interest in allowing the San Francisco Sheriff's Department to hire and retain the best individuals to

25  provide law enforcement services.

26      10.     While official information and other confidential information contained in the San

27  Francisco Sheriff's Department's personnel records and other records may be subject to disclosure

28  under certain limited circumstances, the consequences to the public and the individual deputies of

1   any such disclosure must be meaningfully considered by courts and other tribunals under federal and

2   state law.

3       11.    I respectfully urge this Court to weigh carefully the above-described specific reasons

4   for maintaining the confidentiality of such personnel records against Plaintiffs' request to review the

5   records of the individual deputies, which are unrelated to Plaintiffs' arrests/detentions that forms the

6   basis for their lawsuit against the deputies.

7       12.    In the event that this Court has any question whether any personnel records of the

8   deputies should be disclosed, I further request this Court conduct an *in camera* inspection of such

9   records before ordering any disclosure.

10      13.    In the event that this Court orders any disclosure of any personnel records following

11  its *in camera* inspection, I further request that this Court fashion a protective order precluding any

12  disclosure or dissemination of any records, documents or information ordered disclosed for any

13  purpose other than the express and specific purpose for which this Court has ordered such disclosure,

14  and for such other safeguards and sanctions as this Court deems proper and that any disclosure order

15  relative to discovery sought by Plaintiffs be restricted to distribution to counsel for Plaintiffs only,

16  absent a further order allowing distribution beyond counsel for Plaintiffs.  Such a protective order

17  also should require counsel for Plaintiffs to return all copies of all disclosed documents upon the

18  conclusion of Plaintiffs' lawsuit.

19      14.    Should this Court order the production to Plaintiffs of any document within the files

20  inspected by the Court, I request the Court also require all personal information regarding the

21  officer, such as his/her social security, driver's license number, address, etc. be redacted prior to

22  production.

23

24

25

26

27

28

DEMPSEY DECLARATION;                                    4         c:\docume~1\sfsd\locals~1\temp\notes6030c8\00462994.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

1         I declare under penalty of perjury under the laws of the United States that the preceding

2     declaration is true, and that this declaration was executed on ~~January~~ *February* *5*, 2008, at San Francisco,

3     California.

4

5     _____

      JAN DEMPSEY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ALEMOZAFFAR V. CCSF, ET AL. – US DISTRICT COURT NO. C07-4494 JSW

2

### PROOF OF SERVICE

3

I, HELEN LAU, declare as follows:

4

I am a citizen of the United States, over the age of eighteen years and not a party to the
within entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza

5

Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

6

On February 6, 2008, I served the attached:

7

### DECLARATION OF JAN DEMPSEY

on the interested parties in said action, by placing a true copy thereof in sealed envelope(s) addressed

8

as follows:

9

Sanford M. Cipinko, Esq.
Jeremy Cloyd, Esq.

10

Law Offices of Sanford M. Cipinko
55 Francisco Street, Suite 403

11

San Francisco, CA 94133
Telephone:      (415) 693-9905

12

Facsimile:      (415) 693-9904
*Counsel of Plaintiff*

13

and served the named document in the manner indicated below:

14

☒       **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above

15

documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States
Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and

16

processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited,
postage prepaid, with the United States Postal Service that same day.

17

☐       **BY PERSONAL SERVICE**: I sealed true and correct copies of the above documents in addressed envelope(s) and

18

caused such envelope(s) to be delivered by hand at the above locations to a professional messenger service. **A
declaration from the messenger who made the delivery ☐ is attached or ☐ will be filed separately with the
court.**

19

☐       **BY OVERNIGHT DELIVERY**: I sealed true and correct copies of the above documents in addressed envelope(s) and

20

placed them at my workplace for collection and delivery by overnight courier service. I am readily familiar with the practices
of the San Francisco City Attorney's Office for sending overnight deliveries. In the ordinary course of business, the sealed

21

envelope(s) that I placed for collection would be collected by a courier the same day.

22

☐       **BY FACSIMILE**: Based on a written agreement of the parties to accept service by fax, I transmitted true and correct
copies of the above document(s) via a facsimile machine at telephone number (415) 554-3837 to the persons and the fax

23

numbers listed above. The fax transmission was reported as complete and without error. The transmission report was
properly issued by the transmitting facsimile machine, and **a copy of the transmission report ☐ is attached or ☐ will
be filed separately with the court.**

24

I declare under penalty of perjury under the laws of the State of California that the foregoing

25

is true and correct.

26

Executed February 6, 2008, at San Francisco, California.

27

28

_____
HELEN LAU

DEMPSEY DECLARATION;
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

n:\lit\li2007\080046\00462994.doc

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  SCOTT D. WIENER, State Bar #189266
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-4283
6  Facsimile:    (415) 554-3837

7  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11  MEHRDAD ALEMOZAFFAR,              Case No. C07-4494 JSW

12          Plaintiff,                **DECLARATION OF LT. MICHAEL
                                       STASKO**
13      vs.
                                       Date Action Filed:    July 20, 2007
14  CITY AND COUNTY OF SAN            Trial Date:           None Set
    FRANCISCO, a municipal corporation;
15  JESSE SERNA, individually and in his
    official capacity as a police officer for the
16  CITY AND COUNTY OF SAN
    FRANCISCO; GARY MORIYAMA,
17  individually and in his official capacity as
    a police officer for the CITY AND
18  COUNTY OF SAN FRANCISCO; J
    MCGRATH, individually and in his
19  official capacity as a police officer for the
    CITY AND COUNTY OF SAN
20  FRANCISCO; J. REYMUNDO,
    individually and in his official capacity as
21  a deputy sheriff officer for the CITY AND
    COUNTY OF SAN FRANCISCO; G.
22  COVIELLO, , individually and in his
    official capacity as a deputy sheriff officer
23  for the CITY AND COUNTY OF SAN
    FRANCISCO.
24
           Defendants.
25

26

27

28

STASKO DECLARATION;                         1                    n:\lit\li2007\080046\00462985.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

1    I, Michael Stasko, declare as follows:

2    1.    I am a Lieutenant in the San Francisco Police Department. I am the Commanding

3    Officer of the Legal Division of the San Francisco Police Department and, as such, am responsible

4    for legal matters involving the San Francisco Police Department, including lawsuits such as this one.

5    I have been employed as a San Francisco Police Officer for 27 years and have served in a variety of

6    assignments with the San Francisco Police Department. I have personal knowledge of the contents

7    of this declaration, and, if called upon to testify, I could and would testify competently to the

8    contents of this declaration.

9    2.    I understand that Plaintiffs have served discovery requests seeking certain documents

10    and information relating to officers who were allegedly involved in the May 12, 2007, arrest giving

11    rise to this case, specifically, Officer Jesse Serna, Officer Gary Moriyama, and Officer James

12    McGrath.

13    3.    The materials and information encompassed by Plaintiffs' requests include: (1)

14    complaints relating to the officers; (2) performance evaluation materials relating to the officers; (3)

15    training materials relating to the indicated officers; (4) disciplinary materials relating to the officers;

16    (5) investigations relating to the officers; and (6) materials relating to incidents involving the officers

17    that are unrelated to the arrest giving rise to this lawsuit.

18    4.    I have personally reviewed the personnel and training files of the identified officers.

19    The San Francisco Police Department has maintained the confidentiality of the documents described

20    in greater detail below, in compliance with California law.

21    5.    I am familiar with the types of information contained in a San Francisco Police

22    Officer's personnel file. San Francisco Police Officers understand and expect that information from

23    their personnel records and other private information may not be voluntarily disclosed by the San

24    Francisco Police Department. Statutes such as Penal Code sections 146e, 1328.5 and California

25    Vehicle Code section 1808.4 explicitly recognize that the disclosure of certain information about law

26    enforcement officers can jeopardize their safety and the safety of their families. Further, California

27    Evidence Code Section 1040 sets up a strict procedure requiring a showing of "good cause" for the

28    disclosure of a peace officer's personnel records and requires a court order before any such personnel

1  records may be disclosed.  In view of the clear dangers of law enforcement work, the San Francisco

2  Police Department has an abiding interest in assuring the safety and security of its officers and their

3  families to the fullest extent possible.  Accordingly, various policies and procedures of the San

4  Francisco Police Department also impose a duty to maintain the confidentiality and security of

5  information from its officers' personnel records.

6       6.    A court order to disclose all or significant portions of an officer's personnel file would

7  have severe consequences for the San Francisco Police Department.  Regardless of the Court's best

8  efforts to maintain the confidentiality of disclosed records, the affected officers would feel that their

9  legal right to personal privacy and dignity has been compromised.  Disclosure would cause officers

10  who are not defendants in this case to feel insecure about their safety and privacy and, as a result, the

11  morale of the San Francisco Police Department would suffer.  Any decline in morale adversely

12  affects the San Francisco Police Department in that its ability to attract and retain the most qualified

13  individuals.

14       7.    The same grave concerns described above with respect to personnel records in

15  general also are present with respect to records of administrative investigations and investigations of

16  the Office of Citizen Complaints (OCC).  Production of OCC materials would impinge on the

17  privacy expectations of officers and people who file complaints with OCC.  Production of OCC

18  materials also would undermine the effective operation of the Department, as described above.

19       8.    Regarding administrative investigations, the San Francisco Police Department must

20  be able to conduct its own internal investigations without fear of having the results of such

21  investigations publicly disclosed.  If such records of administrative investigations are disclosed, then

22  the San Francisco Police Department's ability effectively to investigate its officers will be severely

23  curtailed, if not completely destroyed.  The need for confidentiality of internal investigations is even

24  more important than the need for confidentiality of performance reviews described above.

25       9.    The above facts highlight the critical need for the confidentiality of various personnel

26  records of the San Francisco Police Department.  Such confidentiality best serves the public interest

27  in allowing the San Francisco Police Department to hire and retain the best individuals to provide

28  law enforcement services.

10.     While official information and other confidential information contained in the San Francisco Police Department's personnel records and other records may be subject to disclosure under certain limited circumstances, the consequences to the public and the individual officers of any such disclosure must be meaningfully considered by courts and other tribunals under federal and state law.

11.     I respectfully urge this Court to weigh carefully the above-described specific reasons for maintaining the confidentiality of such personnel records against Plaintiffs' request to review the records of the individual officers, which are unrelated to Plaintiffs' arrests/detentions that forms the basis for their lawsuit against the officers.

12.     In the event that this Court has any question whether any personnel records of the officers should be disclosed, I further request this Court conduct an *in camera* inspection of such records before ordering any disclosure.

13.     In the event that this Court orders any disclosure of any personnel records following its *in camera* inspection, I further request that this Court fashion a protective order precluding any disclosure or dissemination of any records, documents or information ordered disclosed for any purpose other than the express and specific purpose for which this Court has ordered such disclosure, and for such other safeguards and sanctions as this Court deems proper and that any disclosure order relative to discovery sought by Plaintiffs be restricted to distribution to counsel for Plaintiffs only, absent a further order allowing distribution beyond counsel for Plaintiffs. Such a protective order also should require counsel for Plaintiffs to return all copies of all disclosed documents upon the conclusion of Plaintiffs' lawsuit.

14.     Should this Court order the production to Plaintiffs of any document within the files inspected by the Court, I request the Court also require all personal information regarding the officer, such as his/her social security, driver's license number, address, etc. be redacted prior to production.

I declare under penalty of perjury under the laws of the United States that the preceding

declaration is true, and that this declaration was executed on ~~January~~ FEB 4 , 2008, at San Francisco,

California.

LIEUTENANT MICHAEL STASKO

7

1  **ALEMOZAFFAR V. CCSF, ET AL. – US DISTRICT COURT NO. C07-4494 JSW**

2  **PROOF OF SERVICE**

3  I, HELEN LAU, declare as follows:

4  I am a citizen of the United States, over the age of eighteen years and not a party to the
within entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza

5  Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

6  On February 6, 2008, I served the attached:

7  **DECLARATION OF LT. MICHAEL STASKO**

on the interested parties in said action, by placing a true copy thereof in sealed envelope(s) addressed

8  as follows:

9  Sanford M. Cipinko, Esq.
Jeremy Cloyd, Esq.

10  Law Offices of Sanford M. Cipinko
55 Francisco Street, Suite 403

11  San Francisco, CA 94133
Telephone:     (415) 693-9905

12  Facsimile:      (415) 693-9904
*Counsel of Plaintiff*

13  and served the named document in the manner indicated below:

14  ☒  **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above

15  documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States
Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and

16  processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited,
postage prepaid, with the United States Postal Service that same day.

17  ☐  **BY PERSONAL SERVICE:** I sealed true and correct copies of the above documents in addressed envelope(s) and

18  caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service. **A
declaration from the messenger who made the delivery** ☐ **is attached or** ☐ **will be filed separately with the**

19  **court.**

20  ☐  **BY OVERNIGHT DELIVERY:** I sealed true and correct copies of the above documents in addressed envelope(s) and
placed them at my workplace for collection and delivery by overnight courier service. I am readily familiar with the practices

21  of the San Francisco City Attorney's Office for sending overnight deliveries. In the ordinary course of business, the sealed
envelope(s) that I placed for collection would be collected by a courier the same day.

22  ☐  **BY FACSIMILE:** Based on a written agreement of the parties to accept service by fax, I transmitted true and correct

23  copies of the above document(s) via a facsimile machine at telephone number (415) 554-3837 to the persons and the fax
numbers listed above. The fax transmission was reported as complete and without error. The transmission report was

24  properly issued by the transmitting facsimile machine, and **a copy of the transmission report** ☐ **is attached or** ☐ **will
be filed separately with the court.**

25  I declare under penalty of perjury under the laws of the State of California that the foregoing

26  is true and correct.

27  Executed February 6, 2008, at San Francisco, California.

28  _____
HELEN LAU

STASKO DECLARATION;                                                                   n:\lit\li2007\080046\00462985.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW



# Killing in the dark

*Two years later, the death of Asa Sullivan remains a mystery*

By G.W. Schulz

> gwschulz@sfbg.com

The San Francisco Police Department doesn't want people to know about Asa B. Sullivan, a case that illustrates how difficult it is to get even basic information about law enforcement, which leaves the public in the dark about a public agency that makes life-and-death decisions.

Officers filled Sullivan with 16 bullets nearly two years ago on June 6, 2006. Sullivan was unarmed and hiding in the cramped attic of a townhouse at the Parkmerced complex near San Francisco State University when the shooting occurred.

The *Guardian* has spent the intervening time trying fruitlessly to obtain public records and other information from the department about what happened to Sullivan and about the officers involved, including the results of now-completed investigations.

Sullivan's death briefly grabbed headlines, but beyond what police told the press at the time, the department has rejected several requests for reports and other documents related to the shooting. The department in February of this year rejected another records request, one of four rebuffed since Sullivan's death.

Police initially claimed Sullivan's gun was found at the scene, but that story changed significantly within a short period of time. Police later said the officers who shot him believed an eyeglasses case held by Sullivan was a gun.

It all started when the neighbors of 2 Garces Drive called police believing squatters had taken over the townhouse, but Sullivan was helping the tenants clean up so they could get their security deposit before moving out.

When police arrived, they ordered Sullivan's friend, Jason Martin, to the floor after the officers aimed their weapons at him without explanation while Sullivan fled into an attic, according to allegations that later appeared in a federal civil suit filed by Sullivan's family.

Sullivan was on probation for pot and any contact with police would surely have caused him more problems, but as we reported shortly after Sullivan was killed, the department's General Orders instruct that when a suspect is barricaded, the responding officers should call in a negotiator. A K-9 unit was called that night, according to the suit, but it doesn't appear the officers waited for it to show up.

Two officers tried to call Sullivan down before pursuing him into the attic. The rest is unclear except that the officers, John Keesor and Michelle Alvis, shot Sullivan to death believing he was armed and intended to shoot them first. But no gun was ever found. The 25-year-old Sullivan, a San Francisco native, was working for Goodwill Industries at the time and had a young son named Asa Isaiah Sullivan.

We first sent a public records request to the SFPD shortly after Sullivan's death asking for "any and all documentation" related to the shooting including e-mails, notes, and witness statements. The department's legal division responded that the material was exempt from disclosure laws because they were part of an ongoing law-enforcement investigation, a common response when reporters seek such documents.

After learning at a September 2006 San Francisco Police Commission meeting that some elements of the investigation were complete, we filed another request. The department's rulebook requires that two divisions in the department — the homicide detail and internal affairs — complete their examinations of deadly officer-involved shootings within two months of the incident.

But again, citing the state's Government Code, which allows them to withhold material considered part of an ongoing probe, the department responded that an investigation by the district attorney and an analysis of Sullivan's body by the medical examiner were not complete.

Two months later, we confirmed through Sullivan's autopsy that he'd been shot 16 times, so we filed another request for documents related to the shooting. But again the department's legal division claimed the investigation was still open and disclosure would endanger its successful completion.

The alternative by then was to wait for the federal civil suit filed against the city by Sullivan's family to unfold slowly: through that, perhaps we could determine if new evidence from the shooting would appear in the public record. No success there either. The parties requested a protective order in August 2006 that made crucial information in the case confidential, including personnel records of the officers involved as well as audiotapes, videotapes, photographs, and transcripts related to the investigation.

Through the suit, however, we did learn last November that the Office of Citizen Complaints and the police department's Management Control Division, a.k.a. internal affairs, had completed their investigations of the shooting.

So we filed another request in February of this year. Yet again, however, the department's legal division responded that the records were protected under the state's Penal Code, which grants special exemptions for information related to the conduct of law-enforcement personnel. The OCC responded the same way in its denial of our request.

Making matters worse, California's State Supreme Court ruled in an unrelated case in August of 2006 that citizens and the press would no longer be able to access most public information about why individual officers are charged with misconduct or even possibly breaking the law.

Records of misconduct charges filed by the OCC or the police chief against officers had largely been open to the public until then through summaries that appeared on the agenda of the police commission. The public could also attend misconduct hearings at the Hall of Justice which included testimony from officers.

But the Supreme Court ruling — known as the *Copley* decision — put a stop to it by broadening the scope of privacy laws that exclusively protected cops from the disclosure of disciplinary records. Since then, stories from Bay Area media outlets about police misconduct have been few and far between despite a steady stream of cases.

Of course, there's a way around it all. Sometimes documents show up at the *Guardian* building in Potrero Hill without a return address, and literally dozens of people with potential access to records related to Sullivan's death could plausibly deny knowing how they were accidentally sent to G.W. Schulz, *San Francisco Bay Guardian,* 135 Mississippi St., San Francisco, Calif., 94107.

Maybe by the June anniversary of Sullivan's shooting, a fuller story of what happened that day (from any number of perspectives — we're interested in talking to anyone) could land in front of readers. Maybe.

Wednesday March 12, 2008