# Alemozaffar

v.

# City and County of San Francisco, et al.

Case No. C07-4494 JSW

Exhibits A through C

to

Objection to Discovery Order by
Magistrate Judge
(Fed. R. Civ. P. 72(a))

# EXHIBIT A

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  SCOTT D. WIENER, State Bar #189266
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-4283
6  Facsimile:    (415) 554-3837

7  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRDAD ALEMOZAFFAR,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; JESSE SERNA, individually and in his official capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; GARY MORIYAMA, individually and in his official capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; J MCGRATH, individually and in his official capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; J. REYMUNDO, individually and in his official capacity as a deputy sheriff officer for the CITY AND COUNTY OF SAN FRANCISCO; G. COVIELLO, , individually and in his official capacity as a deputy sheriff officer for the CITY AND COUNTY OF SAN FRANCISCO.<br><br>Defendants. | Case No. C07-4494 JSW<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**<br><br>Date Action Filed:   July 20, 2007<br>Trial Date:           None Set |

1  Pursuant to Federal Rule of Civil Procedure 34, Defendant City and County of San Francisco
2  hereby responds to Plaintiffs' first set of requests for production.

3  Request for Production No. 1

4  All documents identified in the City and County of San Francisco's (CCSF) initial
5  disclosures.

6  Response to Request for Production No. 1

7  The City will produce the requested documents to the extent that they are in the City's
8  possession, custody, or control, and to the extent not previously produced.

9  Request for Production No. 2

10  All CCSF internal affairs files regarding misconduct complaints against the individual
11  defendants in this lawsuit.

12  Response to Request for Production No. 2

13  The City objects to this request as vague, overbroad, not reasonably calculated to lead to the
14  discovery of admissible evidence, and seeking documents protected by the attorney-client privilege,
15  work-product doctrine, right of privacy, and official information privilege.

16  Request for Production No. 3

17  All policies and procedures manuals applicable to the individual defendants in this lawsuit at
18  the time of the subject incident.

19  Response to Request for Production No. 3

20  The City objects to this request as vague, overbroad, oppressive, and not reasonably
21  calculated to lead to the discovery of admissible evidence. Subject to and without waiving those
22  objections, the City responds as follows:

23  The City will produce policy and procedure manuals relating to use of force, use of tasers,
24  and arrest techniques.

25  Request for Production No. 4

26  All forms used by the CCSF internal affairs for recording and processing complaints.

27
28

Response to Request for Production No. 4

2    The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to
3 lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client
4 privilege, work-product doctrine, right of privacy, and official information privilege.

5 Request for Production No. 5

6    Annual reports of the CCSF internal affairs division for the period of nine years prior to the
7 date of the subject incident.

8 Response to Request for Production No. 5

9    The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to
10 lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client
11 privilege, work-product doctrine, right of privacy, and official information privilege.

12 Request for Production No. 6

13    A list of misconduct complaints filed against the individual defendants in this lawsuit while
14 employed with the CCSF.

15 Response to Request for Production No. 6

16    The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to
17 lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client
18 privilege, work-product doctrine, right of privacy, and official information privilege.

19 Request for Production No. 7

20    All investigation case files for the misconduct complaints filed against the individual
21 defendants in this lawsuit while employed with the CCSF.

22 Response to Request for Production No. 7

23    The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to
24 lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client
25 privilege, work-product doctrine, right of privacy, and official information privilege.

DOCUMENT RESPONSES;    3    n:\lit\li2007\080046\00462981.doc
Alemozaffar v. CCSF, et al. – USDC No. C07-4494 JSW

Request for Production No. 8

All audits and reviews of the units to which the individual defendants in this lawsuit were assigned at the time of the subject incident, for the period of nine years prior to the date of the incident.

Response to Request for Production No. 8

The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege, work-product doctrine, right of privacy, and official information privilege.

Request for Production No. 9

All complaints for administrative violations filed against the individual defendants in this lawsuit while employed with the CCSF.

Response to Request for Production No. 9

The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege, work-product doctrine, right of privacy, and official information privilege.

Request for Production No. 10

All use of force reports for the individual defendants in this lawsuit.

Response to Request for Production No. 10

The City objects to this request as vague, overbroad, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving those objections, the City responds as follows:

The City has produced the incident reports prepared by the officers and deputies relating to the incident giving rise to this case.

Request for Production No. 11

All records of arrests by the individual defendants in this lawsuit for the period of nine years prior to the date of the incident.

Response to Request for Production No. 11

The City objects to this request as vague, overbroad, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving those objections, the City responds as follows:

The City will produce the incident reports and arrest materials relating to the incident giving rise to this case, to the extent not previously produced.

Request for Production No. 12

All reports regarding injuries received by the individual defendants in this lawsuit while in the course and scope of their employment with the CCSF.

Response to Request for Production No. 12

The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege, work-product doctrine, right of privacy, and official information privilege.

Request for Production No. 13

All reports regarding injuries to persons arrested by the individual defendants in this lawsuit while in the course and scope of their employment with the CCSF.

Response to Request for Production No. 13

The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege, work-product doctrine, right of privacy, and official information privilege.

Request for Production No. 14

All performance evaluations for the individual defendants in this lawsuit relating to their employment with the CCSF.

Response to Request for Production No. 14

The City objects to this request as vague, overbroad, oppressive, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege, work-product doctrine, right of privacy, and official information privilege.

1 | Request for Production No. 15

2 | All training materials used by the CCSF that concern the use of force.

3 | Response to Request for Production No. 15

4 | The City objects to this request as vague, overbroad, oppressive, and not reasonably

5 | calculated to lead to the discovery of admissible evidence. Subject to and without waiving those

6 | objections, the City responds as follows:

7 | The City will produce training manuals relating to use of force, subject to a protective order.

8 | Request for Production No. 16

9 | All training materials used by the CCSF that concern the use of Tasers.

10 | Response to Request for Production No. 16

11 | The City objects to this request as vague, overbroad, oppressive, and not reasonably

12 | calculated to lead to the discovery of admissible evidence. Subject to and without waiving those

13 | objections, the City responds as follows:

14 | The City will training manuals relating to use of tasers, subject to a protective order.

15 | Request for Production No. 17

16 | All documents reflecting or constituting communication relating to the subject incident,

17 | including without limitation emails, letters and notes.

18 | Response to Request for Production No. 17

19 | The City objects to this request as vague and seeking documents protected by the attorney-

20 | client privilege, work-product doctrine, right of privacy, and official information privilege. Subject

21 | to and without waiving those objections, the City responds as follows:

22 | The City will produce responsive nonprivileged documents in its possession, custody, or

23 | control, to the extent not previously produced.

24 | Request for Production No. 18

25 | All documents containing, reflecting, or relating to any statements about the subject incident

26 | by any party to this lawsuit.

27

28

1  Response to Request for Production No. 18

2  The City objects to this request as vague and seeking documents protected by the attorney-
3  client privilege, work-product doctrine, right of privacy, and official information privilege. Subject
4  to and without waiving those objections, the City responds as follows:

5  The City will produce responsive nonprivileged documents in its possession, custody, or
6  control, to the extent not previously produced.

7  Request for Production No. 19

8  All witness statements relating or referring to the subject incident.

9  Response to Request for Production No. 19

10  The City objects to this request as vague and seeking documents protected by the attorney-
11  client privilege, work-product doctrine, right of privacy, and official information privilege. Subject
12  to and without waiving those objections, the City responds as follows:

13  The only documents of which the City is aware are documents produced by Plaintiff.

14  Request for Production No. 20

15  All documents reflecting the number of times an electric stun gun or Taser was used at the
16  time of the subject incident.

17  Response to Request for Production No. 20

18  The City objects to this request as vague and seeking documents protected by the attorney-
19  client privilege, work-product doctrine, right of privacy, and official information privilege. Subject
20  to and without waiving those objections, the City responds as follows:

21  The City will produce responsive nonprivileged documents in its possession, custody, or
22  control, to the extent not previously produced.

23  Request for Production No. 21

24  All photographs that relate to the subject incident and the injuries sustained in the incident.

25  Response to Request for Production No. 21

26  The City objects to this request as vague and seeking documents protected by the attorney-
27  client privilege, work-product doctrine, right of privacy, and official information privilege. Subject
28  to and without waiving those objections, the City responds as follows:

1  The only responsive documents of which the City is aware are the photographs produced by
2  Plaintiff.

4  Dated: February 5, 2008

        DENNIS J. HERRERA
        City Attorney
        JOANNE HOEPER
        Chief Trial Deputy
        SCOTT D. WIENER
        Deputy City Attorney

By: _____
        SCOTT D. WIENER
        Attorneys for Defendant
        CITY AND COUNTY OF SAN FRANCISCO

**ALEMOZAFFAR V. CCSF, ET AL. – US DISTRICT COURT NO. C07-4494 JSW**

**PROOF OF SERVICE**

I, HELEN LAU, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

On February 6, 2008, I served the attached:

**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**

on the interested parties in said action, by placing a true copy thereof in sealed envelope(s) addressed as follows:

Sanford M. Cipinko, Esq.
Jeremy Cloyd, Esq.
Law Offices of Sanford M. Cipinko
55 Francisco Street, Suite 403
San Francisco, CA 94133
Telephone:   (415) 693-9905
Facsimile:     (415) 693-9904
*Counsel of Plaintiff*

and served the named document in the manner indicated below:

☒ **BY UNITED STATES MAIL:** Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☐ **BY PERSONAL SERVICE:** I sealed true and correct copies of the above documents in addressed envelope(s) and caused such envelope(s) to be delivered by hand at the above locations by a professional messenger service. **A declaration from the messenger who made the delivery** ☐ **is attached or** ☐ **will be filed separately with the court.**

☐ **BY OVERNIGHT DELIVERY:** I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and delivery by overnight courier service. I am readily familiar with the practices of the San Francisco City Attorney's Office for sending overnight deliveries. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be collected by a courier the same day.

☐ **BY FACSIMILE:** Based on a written agreement of the parties to accept service by fax, I transmitted true and correct copies of the above document(s) via a facsimile machine at telephone number (415) 554-3837 to the persons and the fax numbers listed above. The fax transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine, and **a copy of the transmission report** ☐ **is attached** or ☐ **will be filed separately with the court.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed February 6, 2008, at San Francisco, California.

_____
HELEN LAU

# EXHIBIT B

1  SANFORD M. CIPINKO, Esq., SBN 88102
   JEREMY CLOYD, Esq., SBN 239991
2  LAW OFFICES OF SANFORD M. CIPINKO
   55 FRANCISCO STREET, SUITE 403
3  SAN FRANCISCO, CA 94133
   VOICE:       (415) 693-9905
4  FACSIMILE: (415) 693-9904

5  Attorneys for Plaintiff
   MEHRDAD ALEMOZAFFAR
6

7

8
                IN THE UNITED STATES DISTRICT COURT
9
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11 |                                    ) Case No. C 07-04494 JSW
   | MEHRDAD ALEMOZAFFAR,                )
12 |                                    )
   |           Plaintiff,                ) [PROPOSED] ORDER REGARDING
13 |                                    ) DEFENDANTS' RESPONSES TO
   |     vs.                             ) PLAINTIFF'S REQUESTS FOR
14 |                                    ) PRODUCTION, SET ONE
   | CITY AND COUNTY OF SAN              )
15 | FRANCISCO, a municipal corporation; )
   | JESSE SERNA, individually and in his) Date:       June 4, 2008
16 | official capacity as a police officer for the ) Time:    9:30 a.m.
   | CITY AND COUNTY OF SAN              ) Courtroom:  E
17 | FRANCISCO; GARY MORIYAMA,           )
   | individually and in his official capacity as a )
18 | police officer for the CITY AND COUNTY )
   | OF SAN FRANCISCO; J. MCGRATH,      )
19 | individually and in his official capacity as a )
   | police officer for the CITY AND COUNTY )
20 | OF SAN FRANCISCO; J. REYMUNDO,     )
   | individually and in his official capacity as a )
21 | deputy sheriff officer for the CITY AND )
   | COUNTY OF SAN FRANCISCO; G.        )
22 | COVIELLO, individually and in his official )
   | capacity as a deputy sheriff officer for the )
23 | CITY AND COUNTY OF SAN             )
   | FRANCISCO ; and DOES 1-50,         )
24 | individually and in their official capacities. )
25 |           Defendants.               )
   |_____)
26

27

28

[PROPOSED] ORDER RE DISCOVERY; CASE NO. C 07-04494 JSW                    1

1    This discovery dispute regarding Defendants' responses to document requests was presented to the Court in the form of a May 20, 2008 joint letter to Judge Jeffrey S. White. On May 21, 2008, the Honorable Jeffrey S. White referred this matter to Magistrate Judge Elizabeth D. Laporte, in front of whom a hearing on the matter was scheduled for June 4, 2008 at 9:30 a.m. in Courtroom E.

    Scott Wiener appeared at the hearing on behalf of Defendants City and County of San Francisco and the individually named defendants. Jeremy Cloyd appeared on behalf of plaintiff Mehrdad Alemozaffar. After considering the papers submitted and the arguments of counsel, and finding good cause, the Court rules as follows:

    Defendants shall comply with Plaintiff's Request for Production 2 as limited by this Order to excessive force and false arrest complaints for the duration of the individuals' employment. This limitation shall be broadly construed.

    Defendants shall comply with Plaintiff's Request for Production 4 as limited by this Order to the period of five years before the date of the subject incident.

    Defendants shall comply with Plaintiff's Request for Production 5 as limited by this Order to the period of five years before the date of the subject incident.

    Defendants shall comply with Plaintiff's Request for Production 6 as limited by this Order to excessive force and false arrest complaints for the duration of the individuals' employment. This limitation shall be broadly construed.

    Defendants shall comply with Plaintiff's Request for Production 7 as limited by this Order to excessive force and false arrest complaints for the duration of the individuals' employment. This limitation shall be broadly construed.

    Defendants shall comply with Plaintiff's Request for Production 8 based upon counsel's agreement to comply.

    Defendants shall comply with Plaintiff's Request for Production 9 as limited by this Order to administrative violations relating to reporting use of force. This limitation shall be broadly construed.

1  Defendants shall comply with Plaintiff's Request for Production 10 based upon counsel's agreement to comply.

Defendants shall not comply with Plaintiff's Requests for Production 11 and 13 based upon Plaintiff's agreement to withdraw this request.

Defendant shall comply with Plaintiff's Request for Production 14. However, defendants may redact the responsive documents so as to limit the production to performance evaluations relating to excessive force or false arrest. This limitation shall be construed broadly and plaintiff may contest redactions by in camera review.

Defendants shall comply with this Order by producing or making available responsive documents by July 4, 2008. Plaintiff shall reimburse Defendants for agreed upon reproduction costs on or before the date of production. If there is a dispute about reproduction costs, the parties may submit the dispute to Magistrate Judge Laporte by joint letter not to exceed one page.

**IT IS SO ORDERED.**

DATED: June 11, 2008      By: *Elizabeth D. Laporte*
                              ELIZABETH D. LAPORTE
                              United States Magistrate Judge

Approved as to form:

DATED: June 10, 2008      LAW OFFICES OF SANFORD M. CIPINKO

                          By: *Jeremy Cloyd*
                              JEREMY CLOYD
                              Attorneys for Plaintiff

DATED: June 10, 2008      DENNIS J. HERRERA
                          City Attorney
                          JOANNE HOEPER
                          Chief Trial Deputy
                          SCOTT D. WIENER
                          Deputy City Attorney

                          By:_____
                              SCOTT D. WIENER
                              Attorneys for Defendants

# EXHIBIT C



# Killing in the dark

*Two years later, the death of Asa Sullivan remains a mystery*

By G.W. Schulz

> gwschulz@sfbg.com

The San Francisco Police Department doesn't want people to know about Asa B. Sullivan, a case that illustrates how difficult it is to get even basic information about law enforcement, which leaves the public in the dark about a public agency that makes life-and-death decisions.

Officers filled Sullivan with 16 bullets nearly two years ago on June 6, 2006. Sullivan was unarmed and hiding in the cramped attic of a townhouse at the Parkmerced complex near San Francisco State University when the shooting occurred.

The *Guardian* has spent the intervening time trying fruitlessly to obtain public records and other information from the department about what happened to Sullivan and about the officers involved, including the results of now-completed investigations.

Sullivan's death briefly grabbed headlines, but beyond what police told the press at the time, the department has rejected several requests for reports and other documents related to the shooting. The department in February of this year rejected another records request, one of four rebuffed since Sullivan's death.

Police initially claimed Sullivan's gun was found at the scene, but that story changed significantly within a short period of time. Police later said the officers who shot him believed an eyeglasses case held by Sullivan was a gun.

It all started when the neighbors of 2 Garces Drive called police believing squatters had taken over the townhouse, but Sullivan was helping the tenants clean up so they could get their security deposit before moving out.

When police arrived, they ordered Sullivan's friend, Jason Martin, to the floor after the officers aimed their weapons at him without explanation while Sullivan fled into an attic, according to allegations that later appeared in a federal civil suit filed by Sullivan's family.

Sullivan was on probation for pot and any contact with police would surely have caused him more problems, but as we reported shortly after Sullivan was killed, the department's General Orders instruct that when a suspect is barricaded, the responding officers should call in a negotiator. A K-9 unit was called that night, according to the suit, but it doesn't appear the officers waited for it to show up.

Two officers tried to call Sullivan down before pursuing him into the attic. The rest is unclear except that the officers, John Keesor and Michelle Alvis, shot Sullivan to death believing he was armed and intended to shoot them first. But no gun was ever found. The 25-year-old Sullivan, a San Francisco native, was working for Goodwill Industries at the time and had a young son named Asa Isaiah Sullivan.

We first sent a public records request to the SFPD shortly after Sullivan's death asking for "any and all documentation" related to the shooting including e-mails, notes, and witness statements. The department's legal division responded that the material was exempt from disclosure laws because they were part of an ongoing law-enforcement investigation, a common response when reporters seek such documents.

After learning at a September 2006 San Francisco Police Commission meeting that some elements of the investigation were complete, we filed another request. The department's rulebook requires that two divisions in the department — the homicide detail and internal affairs — complete their examinations of deadly officer-involved shootings within two months of the incident.

But again, citing the state's Government Code, which allows them to withhold material considered part of an ongoing probe, the department responded that an investigation by the district attorney and an analysis of Sullivan's body by the medical examiner were not complete.

Two months later, we confirmed through Sullivan's autopsy that he'd been shot 16 times, so we filed another request for documents related to the shooting. But again the department's legal division claimed the investigation was still open and disclosure would endanger its successful completion.

The alternative by then was to wait for the federal civil suit filed against the city by Sullivan's family to unfold slowly: through that, perhaps we could determine if new evidence from the shooting would appear in the public record. No success there either. The parties requested a protective order in August 2006 that made crucial information in the case confidential, including personnel records of the officers involved as well as audiotapes, videotapes, photographs, and transcripts related to the investigation.

Through the suit, however, we did learn last November that the Office of Citizen Complaints and the police department's Management Control Division, a.k.a. internal affairs, had completed their investigations of the shooting.

So we filed another request in February of this year. Yet again, however, the department's legal division responded that the records were protected under the state's Penal Code, which grants special exemptions for information related to the conduct of law-enforcement personnel. The OCC responded the same way in its denial of our request.

Making matters worse, California's State Supreme Court ruled in an unrelated case in August of 2006 that citizens and the press would no longer be able to access most public information about why individual officers are charged with misconduct or even possibly breaking the law.

Records of misconduct charges filed by the OCC or the police chief against officers had largely been open to the public until then through summaries that appeared on the agenda of the police commission. The public could also attend misconduct hearings at the Hall of Justice which included testimony from officers.

But the Supreme Court ruling — known as the *Copley* decision — put a stop to it by broadening the scope of privacy laws that exclusively protected cops from the disclosure of disciplinary records. Since then, stories from Bay Area media outlets about police misconduct have been few and far between despite a steady stream of cases.

Of course, there's a way around it all. Sometimes documents show up at the *Guardian* building in Potrero Hill without a return address, and literally dozens of people with potential access to records related to Sullivan's death could plausibly deny knowing how they were accidentally sent to G.W. Schulz, *San Francisco Bay Guardian*, 135 Mississippi St., San Francisco, Calif., 94107.

Maybe by the June anniversary of Sullivan's shooting, a fuller story of what happened that day (from any number of perspectives — we're interested in talking to anyone) could land in front of readers. Maybe.

Wednesday March 12, 2008